IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

DILLON AUTO SALES, INC.,

            Plaintiff,

vs.

TERRY L. TROUTNER,

            Defendant.

4:14CV104

MEMORANDUM AND ORDER

This matter is before the court on Defendant's Motion to Compel, (Filing No. 66), and Plaintiff's Motion to Quash, (Filing No. 68). For the reasons stated below, Defendant's Motion to Compel will be granted in part and denied in part, and Plaintiff's Motion to Quash will be denied.

BACKGROUND

Plaintiff's complaint was originally filed in the District Court of Lancaster County, Nebraska on March 10, 2014, and it was removed to this court on April 2, 2014. (Filing No. 1). The complaint alleges that while employed at Dillon Auto Sales, Inc., Troutner converted company funds for his personal use, misused a company credit card by impermissibly charging personal expenses, and failed to pay back personal debt he owed to Dillon Auto Sales. (Filing No. 55).[1] Troutner allegedly executed a blank promissory note, payable on demand, wherein he acknowledged he owed sums of money to Dillon Auto Sales. Dillon Auto Sales terminated Troutner's employment "for cause." After Troutner's employment ended, Dillon Auto Sales discovered two of its vehicles were missing from its inventory. Dillon Auto Sales alleges Troutner converted those vehicles for his personal gain.

---

[1] Filing No. 55 is Plaintiff's Amended Complaint.

Troutner filed an answer and counterclaim. ([Filing No. 56](#)).[2] He asserts that while he was employed by Dillon Auto Sales he was entitled to a 10% bonus over and above his regular salary. The bonus was allegedly based on the "net profits" of Dillon Auto Sales. Troutner alleges a shareholder of Dillon Auto Sales, Chris Dillon, used a company credit card for significant personal expenses for which he did not reimburse the company. Troutner alleges these expenses were extensive and affected the calculation of his bonuses.

Discovery disputes have arisen regarding the relevant time period at issue, three of Defendant's requests for production, and Defendant's subpoena served on Plaintiff's third-party accounting firm. Each will be addressed below.

## ANALYSIS

<u>Relevant time period</u>

Many of Defendant's discovery requests seek documents from 2007 to 2014. Plaintiff has conceded information from 2011 to 2014 may be relevant and has produced some documents, including approximately 10,000 pages of the company's general ledger, from that period of time. Defendant argues claims based on activity prior to 2011 are barred by the statute of limitations: Plaintiff asserts some of his claims, specifically breach of contract and wage payment claims, have a longer statute of limitations, making information as old as 2009 potentially relevant. Without making a determination of when the statutes of limitation began to run on each of Defendant's counterclaims, the court finds the information dating back to 2009 may be relevant. To the extent the court grants any portions of Defendant's motion to compel, the requests are limited to the time period of 2009 to 2014.

<u>Requests for Production</u>

Plaintiff objected to Defendant's Requests for Production Nos. 7, 14, and 15.

---

[2] [Filing No. 56](#) is Defendant's Third Amended Answer and Counterclaim.

1.      Request No. 7

Defendant's Request for Production No. 7 seeks certain financial documents and statements related to Dillon Auto Sales and credit card expenses incurred by Mike Dillon, Chris Dillon, and Troutner.  In full, the request and Plaintiff's corresponding response state:

> REQUEST NO. 7: Please produce:
>
> a.      Any and all financial records of Plaintiff for all years in which Defendant Troutner was employed by Plaintiff. Such financial records include, but are not limited to the following: Copies of any and all bank records and accounts of any nature owned or held by Plaintiff and by Christopher Dillon and Mike Dillon;
>
> b.       Any and all financial statements of Plaintiff during all years Defendant was employed by Plaintiff;
>
> c.      True and correct copies of all credit card statements of the Plaintiff relating to any and all company credit cards used by Mike Dillon, Chris Dillon and Defendant to purchase goods and services;
>
> d.      True and correct copies of any and all bills, statements, or other records submitted by all shareholders and employees of the Plaintiff where such individuals were reimbursed by Plaintiff;
>
> e.      True and correct copies of any and all ledgers relating to payment of expenses on behalf of Plaintiff, Chris Dillon and Mike Dillon;
>
> f.      True and correct copies of any and all records and documents wherein said individuals paid back sums owed to Plaintiff or were reimbursed for expenses; and
>
> g.      True and correct copies of records of all accountings relating to the use of Plaintiff's credit card.
>
> RESPONSE: Plaintiff objects to this request on the grounds that it is overly broad, and unduly burdensome, and it contains no temporal limitation. Further, Plaintiff objects to this request on the grounds that this request seeks confidential information and is not reasonably calculated to lead to the discovery of admissible evidence.

([Filing No. 66 at CM/ECF pp. 8-9](#)).

Despite the initial objection, the parties were able to reach a partial compromise wherein Plaintiff produced "general ledger" documents from 2011 through January 2014. This production apparently included approximately 11,000 pages of documents "including every credit and debit transaction" during that time period. ([Filing No. 71 at CM/ECF p. 4](#)). Unsatisfied, Defendant filed his motion to compel arguing Plaintiff should be ordered to respond fully to Request No. 7 for the time periods between 2009 and 2014 because the documents produced do not provide the information requested; specifically, whether personal expenses of Chris Dillon were treated as business expenses and what information was used to calculate his 10% bonuses. Defendant agreed to limit the time of the requests from 2009 to 2014

As written, subparts (a), (d), (e), and (g) are overly broad. Defendant has not limited or defined his requests for any and all "financial records," and "accountings related to the use of Plaintiff's credit card." Likewise, the request for "any and all ledgers relating to payment of expenses on behalf of Plaintiff, Chris Dillon and Mike Dillon" is impermissibly expansive to the extent it seeks documents related to the payment of all expenses on behalf of Dillon Auto Sales during the relevant time period. A response to these requests could include many documents which have no relation to the claims or counterclaims asserted in this lawsuit. Specifically, Defendant is seeking information related to any personal expenses of Chris Dillon paid by Dillon Auto Sales and information about the "net profits" of Dillion Auto Sales to determine if he was properly paid bonuses during the specified period of time. But these requests were not reasonably limited in scope to provide the necessary information without overreaching. Accordingly, the motion to compel will be denied as to those subparts.

In contrast, subparts (b), (c), and (f) are sufficiently limited in scope and seek potentially relevant information regarding Defendant's counterclaims. Unlike a broad

request for "financial records," Defendant's request in subpart (b) for "financial statements" can be understood to mean the four common financial statements: (1) balance sheet; (2) income statement; (3) statement of cash flows; and (4) statement of owner's equity. Because Plaintiff's "net profits" are at issue and the parties have not determined the definition of that term for the purposes of this law suit, the financial statements may assist with the determination and should be produced.

Subparts (c) and (f) directly address the question of whether personal expenses of the company owners were paid by the Dillon Auto Sales and, if so, in what amount. This information is potentially relevant to Defendant's counterclaims regarding whether Dillon Auto Sales' "net profits" (and, in turn, Defendant's bonus) were adversely affected by the improper payment of personal expenses from company funds.

The motion to compel is granted as to subparts (c) and (f), but, as discussed above, only as to the time period from 2009 to 2014.

2. Request No. 14

Defendant's Request for Production No. 14 seeks Dillon Auto Sale's state and federal tax returns for the years 2007 through 2014. In full, the request and Plaintiff's corresponding response state:

> REQUEST NO. 14: Please produce true and correct copies of tax returns, state and federal, filed by Plaintiff from 2007 through 2014.
>
> RESPONSE: Plaintiff objects to this request on the grounds that this request seeks confidential information and is not reasonably calculated to lead to the discovery of admissible evidence.

([Filing No. 66 at CM/ECF p. 10](#)).

Plaintiff has apparently produced income tax returns for the year 2011- 2013. As noted above, the relevant time period is 2009 through 2014. Plaintiff shall supplement its discovery response and produce tax returns for those years.

3.  Request No. 15

Defendant's Request No. 15 seeks the personal federal and state tax returns of Chris Dillon and Mike Dillon from 2007 through 2014. In full, the request and Plaintiff's corresponding response state:

> REQUEST NO. 15: Please produce true and correct copies of tax returns, state and federal, filed by Chris Dillon and Mike Dillon from 2007 through 2014.
>
> RESPONSE: Plaintiff objects to this request on the grounds that this request seeks confidential information and is not reasonably calculated to lead to the discovery of admissible evidence.

([Filing No. 66 at CM/ECF p. 11](Filing No. 66 at CM/ECF p. 11)).

Defendant is seeking production of the personal tax returns of Chris Dillon and Mike Dillon. However, he has not made a threshold showing that these individual tax returns are relevant. Specifically, Defendant does not explain how the personal tax returns of Chris and Mike Dillon have, or may have, any information relevant to any of Defendant's crossclaims or defenses. Absent such a showing, the motion to compel is denied as to Request No. 15.

Motion to Quash

Defendant served a subpoena on third-party BKD, LLP – Plaintiff's accounting firm. ([Filing No. 65](Filing No. 65)). The subpoena sought the following information:

1)  Any and all communications with Dillon Auto Sales, Inc. (hereinafter "Dillon Auto"), including all letters, e-mails, memos and other forms of communication. Such request is limited to 2013 and 2014.

> 2) Any and all communications with Dillon Auto relating to the compensation of Terry Troutner, including letters, e-mails, memos and other forms of communication. Such request is limited to 2009 to 2014.
> 3) Any and all notes taken relating to conversations with Dillon Auto executives from 2013 through 2014.
> 4) Any and all communication with Mike Dillon relating to Dillon Auto beginning 2009 and through 2014. Such communication includes letters, e-mails and memos or other forms of communication.
> 5) Any and all work papers relating to the compensation of Terry Troutner's bonus.
> 6) Any and all work papers relating to the preparation of financial statements and tax returns for calendar years 2009 through 2014.
> 7) Any and all documents, internally or externally generated relating to the compensation of Terry Troutner's bonus from 2009 through 2014.

[Filing No. 65 at CM/ECF p. 6](#).

Plaintiff filed a motion to quash the subpoena. ([Filing No. 68](#)). Plaintiff argues, pursuant to Fed. R. Civ. P. 45(d)(3), the subpoena requires BKD to disclose trade secrets and proprietary commercial information. Plaintiff further alleges the subpoena subjects Dillon Auto Sales and BKD to an undue burden and fails to protect BKD from significant expense in complying with the subpoena. ([Filing No. 68](#)).

Defendant argues the motion to quash should be denied because 1) Plaintiff did not comply with the local rules for properly objecting to a subpoena; 2) Plaintiff does not have standing to file a motion to quash; and 3) the records are relevant to this case based on the testimony of Dillon Auto's management – specifically, that Dillon Auto relied upon figures provided from BKD to determine its "net profit."

In considering a motion to quash, the burden of persuasion is on the movant. See [Sea Tow Intern., Inc. v. Pontin, 246 F.R.D. 421, 424 (E.D.N.Y. 2007)](#). Here, Plaintiff has made a number of conclusory objections without any supporting argument or evidence. For instance, Plaintiff asserts the subpoena requires BKD to disclose Dillon Auto's trade secrets and proprietary commercial information, but does not explain what trade secrets or other proprietary information would be included in the scope of the subpoena. Likewise, Plaintiff

7

does not state how BKD's compliance with the subpoena will subject either Dillon Auto or BKD to undue burden. And as to any burden on BKD, Dillon Auto lacks standing to raise that objection.

Mere assertions of prejudice and burden are insufficient to meet Plaintiff's burden. The motion to quash will be denied.

IT IS ORDERED:

1. Defendant's Motion to Compel, ([Filing No. 66](#)), is granted in part and denied in part as set forth in this order.

2. Plaintiff's Motion to Quash, ([Filing No. 68](#)), is denied.

Dated this 11th day of December, 2015

> BY THE COURT:
>
> *s/ Cheryl R. Zwart*
> United States Magistrate Judge

---

*This opinion may contain hyperlinks to other documents or Web sites. The U.S. District Court for the District of Nebraska does not endorse, recommend, approve, or guarantee any third parties or the services or products they provide on their Web sites. Likewise, the court has no agreements with any of these third parties or their Web sites. The court accepts no responsibility for the availability or functionality of any hyperlink. Thus, the fact that a hyperlink ceases to work or directs the user to some other site does not affect the opinion of the court.