IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | | |
|---|---|---|
| DILLON AUTO SALES, INC., | ) | 8:14CV104 |
| | ) | |
| Plaintiff, | ) | |
| | ) | MEMORANDUM |
| v. | ) | AND ORDER |
| | ) | |
| TERRY L. TROUTNER, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

Plaintiff, Dillon Auto Sales, Inc. ("Dillon"), claims it is owned money by its former general manager, Defendant, Terry L. Troutner ("Troutner"), because he: (1) retained $4,500.00 in cash deposits; (2) used a company-issued credit card for personal purchases and failed to certain repay loans, totaling at least $99,174.99 (as of March 31, 2015); (3) took two vehicles valued at $12,394.00; and (4) received bonuses and other compensation to which he was not entitled. Five theories of recovery are pleaded: (1) unjust enrichment; (2) constructive trust; (3) fraud; (4) constructive fraud; and (5) conversion. (Amended Complaint, Filing No. 55.)[1]

Troutner counterclaims that Dillon: (1) owes him unpaid wages for January 2014 and a bonus of approximately $80,000.00 for calendar year 2013 under the Nebraska Wage Payment Collection Act, Neb. Rev. Stat. §§ 48-1228 to 48-1234; (2) must make an accounting under Neb. Rev. Stat. § 48-1230.1 for bonuses earned during previous years and his one-half share of profits derived from an extended warranty program; (3) breached his employment agreement by failing to (a) provide 30 days notice before terminating the agreement without cause, (b) pay severance benefits: (c) pay bonuses; and (d) pay his share of profits from the extended warranty

---

[1] The action was filed in the District Court of Lancaster County, Nebraska, but Troutner removed it to federal court based on diversity jurisdiction.

program; (4) terminated his employment in violation of Nebraska public policy after Troutner raised concerns about Dillon's fraudulent tax practices and its termination of African-American employees; (5) terminated his employment in violation of 42 U.S.C. § 1981 because he hired the African-American employees and opposed their termination; (6) terminated his employment in violation of Title VII, 42 U.S.C. § 2000e-2, because he hired the African-American employees and opposed their termination; (7) terminated his employment in violation of the Nebraska Fair Employment Practice Act (NFEPA), Neb. Rev. Stat. § 48-1114,[2] because he hired the African-American employees and opposed their termination; and (8) was unjustly enriched by failing to account for profits generated by the extended warranty program. (Third Amended Answer and Counterclaim, Filing No. 56.)

The parties have filed cross-motions for summary judgment (Filing Nos. 129, 133). Dillon's motion is made with respect to all claims and counterclaims, whereas Troutner's motion only concerns the first three counterclaims listed above.

With respect to Dillon's claims, the court finds there are genuine issues of material fact that preclude the entry of summary judgment. *See* Fed. R. Civ. P. 56(a).

The court concludes that Troutner's counterclaims involving the extended warranty program fail as a matter of law because of the applicable statute of frauds, Neb. Rev. Stat. § 36-202 ("In the following cases every agreement shall be void, unless such agreement, or some note or memorandum thereof, be in writing, and subscribed by the party to be charged therewith: (1) Every agreement that, by its terms, is not to be performed within one year from the making thereof ...."). Troutner argues that the statute of frauds does not apply to the alleged profit-sharing agreement because of promissory estoppel, but there is no legal merit to this argument. "Promissory estoppel is not an exception to the statute of frauds." *Fast Ball Sports, LLC v. Metro. Entm't & Convention Auth.*, 835 N.W.2d 782, 794 (Neb. App. 2013)

---

[2] Troutner's pleading incorrectly cites Neb. Rev. Stat. § 48-1004.

(citing *Farmland Service Coop, Inc. v. Klein*, 244 N.W.2d 86 (Neb. 1976); *see also* *Rosnick v. Dinsmore*, 457 N.W.2d 793, 800 (Neb. 1990) (promissory estoppel cannot be used to circumvent protection provided by statute of frauds).

To the extent Troutner is basing his claim for bonuses on the employment agreement's provision for "deferred compensation," the court also concludes as a matter of law that he is not entitled to any payment. The provision reads in part:

> 7. Consideration for Restrictive Covenants. As consideration for the Restrictive Covenants, Employee shall be entitled to receive a funded deferred compensation payment calculated as a percentage of the net profits derived from the Employer's business which he manages (the "Deferred Compensation").
>
> (a) Percentage Amount. Effective as of January 1, 2007 ... the total percentage of net profits of the Employer's business to be deposited with respect to the Deferred Compensation plan shall be ten (10) percent.
>
> (b) Profits Calculated Annually. ... The Deferred Compensation, if any, shall be payable on the earlier of the date that Employee (i) dies or (ii) attains age sixty-five (65), *provided that he is employed by Employer on such date* and provided that Employee has not violated the terms of the Restricted (sic) Covenants....

(Filing No. 134-1 at CM/ECF pp. 3-4 (emphasis supplied)). By its express terms, this provision does not apply because Troutner is less than 65 years old. Any claimed oral agreement for the payment of an annual bonus equal to ten percent of Dillon's profits is unenforceable because of the statute of frauds.

The court concludes as a matter of law that Troutner cannot rely on "Nebraska public policy" to support his claim that he was terminated for raising concerns about Dillon's termination of African-American employees. The clearest statement of Nebraska public policy on this subject is found in NFEPA, which declares that "[i]t shall be an unlawful employment practice for an employer ... to discharge ... any

individual .... because of such individual's race" or "to discriminate against any of his or her employees ... because he or she ... has opposed any practice made an unlawful employment practice by the Nebraska Fair Employment Practice Act, ...." Neb. Rev. Stat. §§ 48-1104(1) and 48-1114(1). Because Troutner has an adequate statutory remedy under NFEPA,[3] his alleged "Nebraska public policy" claim will be dismissed insofar as he contends he was discharged for opposing racial discrimination. *See McClure v. Am. Family Mut. Ins. Co.*, 223 F.3d 845, 856 (8th Cir. 2000) ("Courts have authorized judicial remedies based on public policy only when statutory remedies were lacking.").

Troutner also claims he was discharged in violation of "Nebraska public policy" for raising concerns about Dillon's fraudulent tax practices. With respect to this claim, NFEPA's "whistleblower retaliation" provision broadly declares that "[i]t shall be an unlawful employment practice for an employer to discriminate against any of his or her employees ... because he or she ... has opposed any practice or refused to carry out any action unlawful under federal law or the laws of this state." Neb. Rev. Stat. § 48-1114(3). Tax evasion is a felony under state and federal law. *See* Neb. Rev. Stat. § 77-27,113; 26 U.S.C. § 7201. Thus, although alleged as a "Nebraska public policy" claim, the court concludes that Troutner may be entitled to relief under NFEPA, and the claim will be treated as having been alleged under the Act.[4] *See, e.g., Ludlow v. BNSF Ry. Co.*, 788 F.3d 794 (8th Cir. 2015) (employee engaged in protected activity under NFEPA by cooperating with federal forgery investigation). Troutner argues in his brief that he also was discharged for opposing drug and alcohol use on the dealership property, but his pleadings contain no such allegations.

---

[3] Troutner's race-based retaliation claim under NFEPA is essentially the same as his Title VII claim. *See City of Fort Calhoun v. Collins*, 500 N.W.2d 822, 825 (Neb. 1993) (NFEPA is patterned after Title VII).

[4] The court notes that the Nebraska Supreme Court has held that a NFEPA violation is cognizable under Neb. Rev. Stat. § 20-148 without first exhausting administrative remedies. *See Goolsby v. Anderson*, 549 N.W.2d 153, 157 (Neb. 1996).

As to all other counterclaims, the court finds there are genuine issues of material fact that preclude the entry of summary judgment.

Accordingly,

IT IS ORDERED:

1. Defendant's partial motion for summary judgment (Filing No. 129) is denied in all respects.

2. Plaintiff's motion for summary judgment (Filing No. 133) is granted in part and denied in part, as follows:

    a. Defendant's counterclaims involving payments allegedly owing under an extended warranty program are dismissed with prejudice;

    b. Defendant's counterclaims involving payments allegedly owing as "deferred compensation" are dismissed with prejudice;

    c. Defendant's "Nebraska public policy" counterclaim involving retaliation for allegedly opposing race-based discrimination is dismissed with prejudice; and

    c. In all other respects, Plaintiff's motion is denied.

DATED this 30th day of August, 2016.

BY THE COURT:

s/ *Richard G. Kopf*
Senior United States District Judge